# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| A.G., by and through her father, N.G., individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>COMMUNITY INSURANCE COMPANY d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD,<br><br>      Defendant. | Case No. 1:18-cv-300<br><br>**CLASS ACTION COMPLAINT**<br><br>*Electronically Filed* |

**NOW COMES** Plaintiff A.G., by and through her father, N.G., who, on her own behalf and on behalf of all others similarly situated, asserts to the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following allegations against Community Insurance Company, d/b/a Anthem Blue Cross and Blue Shield ("Defendant"):

## INTRODUCTION

1. This action, brought under the Employee Retirement Income and Security Act, 29 U.S.C. §§ 1001-1191c, arises from Defendant's arbitrary decision to deny health plan benefits for medically necessary services for outdoor/wilderness behavioral health treatment for mental health and substance abuse issues even though the plan at issue provided mental health and substance abuse benefits.

2. Outdoor/wilderness behavioral health programs offer cost-effective treatment for adolescents and young adults with mental health and substance abuse

diagnoses. Outdoor/wilderness behavioral health programs provide traditional, evidence-based mental health and substance abuse treatments in a wilderness setting.

3. Defendant denies coverage for treatment at outdoor/wilderness behavioral healthcare programs on the incorrect basis that such treatment "is not available under the benefit plan for [sic] Wilderness Treatment Program as described in your Certificate of Coverage." The problem with this position is that (a) there is no express exclusion for covering such services; and, (b) coverage for behavioral and mental health is otherwise included in Defendant's coverage grants. Based on the plan's plain language and invoking the rules of construction applicable to ERISA health insurance plans, Defendant has wrongfully denied coverage for these medically necessary services.

## JURISDICTION AND VENUE

4. This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

5. Venue is appropriate in this district because Defendant is headquartered and may be found in this judicial district and many of the breaches at issue took place in this judicial district. 29 U.S.C. § 1132(e)(2).

6. In conformity with 29 U.S.C. § 1132(h), Plaintiff has served this Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

7. At relevant times, N.G. was a full-time employee of MNX Global Logistics, d/b/a, Midnite Express and – while employed there and at the time the services at issue in this case were rendered – lived in Georgia. N.G. now lives in North Carolina. His employer-sponsored health insurance at issue in this litigation was insured and administered by Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield, and is regulated by ERISA, 29 U.S.C. §§ 1001-1191c. Under ERISA, N.G. is a

"plan participant" (29 U.S.C. § 1002(7)). A copy of the insurance plan is attached at **Exhibit A** to this Complaint; it is a common form document whose material terms are identical for all similar insureds.

8. Defendant Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield is a company incorporated in Ohio with its principal place of business located in Mason, Ohio. In this Complaint, "Anthem" refers to the named Defendant and all related, successor, predecessor, parent and subsidiary entities to which allegations pertain.

9. Anthem had full discretionary authority to administer and pay benefits under the plan and accordingly owes fiduciary obligations to plan participants and beneficiaries.

10. N.G.'s daughter, A.G., who was covered under N.G.'s plan and is thus entitled to receive health insurance coverage based on the same plan language as his father, has struggled for years with mental health issues such as depression, anxiety, eating disorders, suicide ideation, and drug use. On January 6, 2017, after counseling, hospitalization, and other therapies had not been successful, A.G. was sent to Blue Ridge Therapeutic Wilderness, an outdoor/behavioral therapy program located in Clayton, Georgia.

11. A.G. was a minor throughout the period in which the subject therapeutic services were rendered.

12. Blue Ridge is an intermediate care program licensed by the state of Georgia as an "Outdoor Child Caring Program" that treats young men and women with mental health and substances abuse diagnoses, including young men and women with diagnoses comparable to A.G.

13. Blue Ridge uses a multidisciplinary approach to treat youths with mental health and substance abuse diagnoses, using outdoor/wilderness behavioral healthcare therapy to deliver traditional, evidence-based treatments in a wilderness setting.

14. Patients, including A.G., receive a psychiatric assessment on intake. Personal treatment plans with tailored goals, objectives, and assignments that promote accountability, insight and growth are developed, implemented and evaluated. Patients live in a community setting in the wilderness and participate in daily tasks and group therapy sessions. Patients also participate in regular individual therapy, group therapy, and family therapy sessions.

15. A.G.'s primary therapist at Blue Ridge is a state-licensed therapist and assessments of patients like A.G. are performed by a doctorate-level psychologist licensed by the state of Georgia.

16. A.G. was treated at Blue Ridge from January 5, 2017 to March 31, 2017. N.G. personally paid $46,650 for services rendered at Blue Ridge.

17. On Oct. 16, 2017, Anthem denied the claims submitted for A.G.'s treatment at Blue Ridge based on a plan provision that excludes claims for "[w]ilderness camps." Those two words are undefined in Anthem's plan but they presumably refer to such entities as YMCA camps, Outward Bound, NOLS, and the like. Even a cursory review of A.G.'s claim – or Blue Ridge's website – shows that the services provided Blue Ridge go well beyond what is provided at "wilderness camps."

18. N.G.'s insurance plan requires one level of internal appeal, and thus the Oct. 16, 2017 denial – which came in response to an appeal - exhausted its internal appeals. In light of the established Plan documents, statements and written

representations by Anthem, any attempt by class members to pursue administrative remedies is futile.

## CLASS ALLEGATIONS

19. A.G., through N.G., brings this lawsuit under Fed. R. Civ. P. 23(a)(1)-(4) and (b)(1), (b)(2) and/or (b)(3) on her own behalf and on behalf of the following class:

> *All persons who are covered under any ERISA-governed health benefit plan fully-insured by Anthem that (1) provides coverage for mental or nervous disorders or substance abuse care and (2) provides coverage for services rendered at skilled nursing facilities and/or rehabilitation hospitals, and (3) who required treatment at one or more outdoor/wilderness behavioral therapy programs during the applicable class period.*

20. The class period for A.G.'s and the class claims extend back three years from the date of the commencement of this action and runs up to the date of class certification.

21. Membership in the proposed class is so numerous that individual joinder of all class members is impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court.

22. Plaintiff's claims are typical of all other class members from all other classes. Plaintiff, like all other class members, required treatment at an outdoor/wilderness behavioral health programs. Plaintiff, like all other class members, did not receive coverage of that treatment due to Defendant's standard practice of excluding outdoor/wilderness behavioral health programs as not covered.

23. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the class and Plaintiff is a member of the class that she seeks to represent.

24. Plaintiff will adequately represent the class because she has interests in common with the proposed class members and plaintiff has retained attorneys who are experienced in class action litigation.

25. Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

- whether Defendant breached its own plan language in denying coverage for services rendered at outdoor behavioral health/wilderness therapy programs;

- what is the appropriate remedy for this breach of Defendant's uniform plan language; and

- whether Defendant's standard exclusion of coverage for services rendered at outdoor behavioral health/wilderness therapy programs violate the federal Mental Health Parity and Addiction Equity Act.

26. The prosecution of separate actions by individual members of each of the class would create a risk of:

- inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for Defendant; and

- adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not party to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

27. The class action method is appropriate for the fair and efficient prosecution of this action.

28. Individual litigation of all claims that might be asserted by all members of the class would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years. Class treatment, by

contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of the Defendant.

29. The certification of the above class would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## LEGAL CLAIMS

### Count 1 – Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)

30. A.G., on her own behalf and on behalf of the proposed class, restates paragraphs 1 – 29 as if fully set forth.

31. A.G.'s first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B).

32. A.G. and the class have standing to assert claims "to recover benefits due … under the plan" and to "clarify [their] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

33. Anthem has breached the terms of its health plans by its denial of health benefits for treatment at outdoor behavioral health/wilderness therapy programs, causing injury to the plaintiff and the class.

34. Under the terms of the plan, Anthem is, generally, required to pay benefits for "Covered Services." To be a Covered Service, the service, supply or treatment must be: "Medically Necessary;" within the scope of the provider's license of the Provider performing the service; rendered while coverage is in force; and not experimental or investigative. **(Ex. A, p. 114).**

35. "Medically Necessary," in turn, is known to be effective, as proven by scientific evidence, in materially improving health outcomes; the most appropriate supply, setting or level of service that can safely be provided that cannot be omitted

consistent with recognized professional standards of care; cost-effective compared to alternative interventions, not experimental; not primarily for the convenience of the insure; and not otherwise excluded. **(Ex. A, p. 116).**

36. Anthem did not challenge the medical necessity of A.G.'s treatment.

37. Anthem specifically covers mental health and substance abuse treatment. **(Ex. A, p. 12).**

38. Anthem's denial is not supported by the language it cites. The relied-upon exclusion for "wilderness camps" does not pertain to the services received at Blue Ridge, which is licensed by the state of Georgia as an Outdoor Child Caring Program; and that uses a multidisciplinary approach to treat youth with mental health and substance abuse diagnoses, using outdoor behavioral health/wilderness therapy to deliver traditional, evidence-based treatments in a wilderness setting.

39. By denying benefits for A.G.'s treatment at Blue Ridge, Anthem wrongly denied her benefits that she was entitled to under the plan.

**Count 2 – Violation of Parity Act Under 29 U.S.C. § 1132(a)(1)(B)**

40. A.G., on her own behalf and on behalf of the proposed class, restates paragraphs 1 - 29 as if fully set forth.

41. Plaintiffs' second claim is for plan enforcement for breach of the protections of the federal Mental Health Parity and Addiction Equity Act ("Parity Act"), whose terms are incorporated as a matter of law into Anthem's plan with Plaintiff and class members. This claim is in alternative to Count 1 and is brought in the event the Court upholds Anthem's interpretation of its own Plan.

42. The Parity Act mandates parity between the "treatment limitations" placed on mental health benefits and on medical/surgical benefits:

> In the case of a group health plan ... that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that—
>
> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan ... and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii).

43. The Parity Act instructed the Secretaries of Labor, Health and Human Services, and Treasury to issue "guidance and information" on its requirements. That guidance was originally provided in Interim Final Rules before being issued as Final Rules. These regulations set forth a step-by-step process to determine whether an exclusion – or an insurer's application of an exclusion – violates the Act. **First**, the relevant limitation must be identified. A limitation can exist on the face of the Plan, or it may occur in application – both require parity. **Second**, the service in question must be classified into one of six categories. All services must be classified, including so-called intermediate services (those between inpatient and outpatient treatment). **Third**, the exclusion or limitation of the mental health care services at issue must be compared to **all** of the medical/surgical limitations within that category to determine if the exclusion of the insured's mental health care is permitted:

> A group health plan ... that provides both medical/surgical benefits and mental health or substance use disorder benefits may not apply any ... treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant ... treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification.

29 C.F.R. § 2590.712(c)(2)(i))(A); Preamble, IFRs, 75 Fed. Reg. at 5413.

44. The statutory requirements of the Parity Act become "terms of" the Plan and are enforceable through ERISA. *UNUM Life Ins. v. Ward*, 526 U.S. 358, 376-77, 119 S.Ct. 1380 (1999); *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program,* 222 F.3d 643, 648 n.4 (9th Cir. 2000); *Cisneros v. Unum Life Ins. Co.*, 134 F.3d 939, 944 (9th Cir. 1998).

45. The Interim Final Rules explained that "the parity requirements for ... treatment limitations are applied on a classification-by-classification basis." Preamble, IFRs, 75 Fed. Reg. at 5412. The Interim Final Rules established six "classifications of benefits" for purposes of Parity Act compliance: (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. Preamble, IFRs, 75 Fed. Reg. at 5413. These categories were expressly retained in the Final Rule. 29 C.F.R. § 2590.712(c)(2)(ii)(A). With respect to "intermediate services" – services that do not fit squarely within the "inpatient" or "outpatient" categories — classification is still required. 29 C.F.R. § 2590.712(c)(2)(ii)(A); *Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*, 852 F.3d 105, 116 (1st Cir. 2017) ("Intermediate services [are] services somewhere between traditional inpatient and outpatient care.").

46. While the insurer has discretion with respect to whether intermediate services should be classified as inpatient or outpatient, all intermediate services must be in the same category. 78 Fed. Reg. 68240, at 68246-7 ("Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits to these classifications.). *See also id.* ("For example, if a plan or issuer classified care in skilled nursing facilities or rehabilitation hospitals as

inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit.").

47. The Final Rules directed that "[r]estrictions based on ***geographic location***, ***facility type***, provider specialty, and other criteria that limit the scope or duration of benefits for services" are nonquantitative "treatment limitations" under the Parity Act. 29 C.F.R. § 2590.712(c)(4)(ii) (emphasis added). A blanket exclusion on outdoor/wilderness behavioral therapy programs is an exclusion of "facility type," and is therefore a nonquantitive treatment limitation. As applied to mental health care, an insurer may not impose this nonquantitative treatment limitation

> with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification.

29 C.F.R. § 2590.712(c)(4).

48. Anthem, however, explicitly ***covers*** medical and surgical services rendered at intermediate facilities such as at rehabilitation hospitals and skilled nursing facilities. **(Ex. A, p. 32, 41).** Anthem has therefore imposed a nonquantitative treatment limitation – a blanket exclusion – on the scope of intermediate services it covers – medically necessary treatment at outdoor/wilderness behavioral healthcare programs – that is not in parity with the treatment limitations it imposes on comparable intermediate medical/surgical services, such as skilled nursing facilities and rehabilitation hospitals, which are expressly covered. Given this disparity, Anthem has

facially employed "processes, strategies, evidentiary standards" and other factors in assessing medically necessary services rendered at outdoor/wilderness behavioral healthcare programs that are different than the standards it employs in assessing medically necessary services rendered at skilled nursing facilities and rehabilitation hospitals. That violates the Parity Act. 29 C.F.R. § 2590.712(c)(4)(ii).

### Count 3 – Violation of Parity Act Under 29 U.S.C. § 1132(a)(3)

49. A.G., on her own behalf and on behalf of the proposed class, restates paragraphs 1-29 as if fully set forth.

50. Plaintiff's third claim is for breach of fiduciary duty for violations of the protections of the federal Mental Health Parity and Addiction Equity Act, whose terms are incorporated as a matter of law into Anthem's plan with A.G. and class members. This claim is in alternative to Count 1 and is brought in the event the Court upholds Anthem's interpretation of its own plan.

51. Pursuant to 29 U.S.C. § 1132(a)(3) A.G. and the class seek to have Anthem provide the class with corrective notice and information, including reformation of the relevant health plan documents.

53. 29 U.S.C. § 1132(a)(3), through which A.G. and the class may enforce the Parity Act as set forth in ERISA at 29 U.S.C. § 1185a, further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce plan terms. To the extent full relief is not available under 29 U.S.C. § 1132(a)(1)(B), then A.G. and the class seek equitable remedies including, without limitation, unjust enrichment, disgorgement, restitution and surcharge arising out of Anthem's failure to administer its ERISA insured health plans as governed by the applicable provisions of the Federal Parity Act.

## Count 4 – Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)

54. A.G., on her own behalf **only** restates paragraphs 1 – 29 as if fully set forth.

55. A.G.'s fourth legal claim is brought under 29 U.S.C. § 1132(a)(1)(B).

56. A.G. has standing to assert claims "to recover benefits due … under the plan" and to "clarify [her] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

57. Anthem has breached the terms of its health plans by its denial of health benefits for treatment at a residential treatment center, causing injury to Plaintiff.

58. Under the terms of the plan, Anthem is, generally, required to pay benefits for "Covered Services." To be a Covered Service, the service, supply or treatment must be: "Medically Necessary;" within the scope of the provider's license of the Provider performing the service; rendered while coverage is in force; and not experimental or investigative. **(Ex. A, p. 114).**

59. As part of her care, A.G. went from Blue Ridge to Sunrise Residential Treatment Center, a licensed residential treatment center located in Hurricane, Utah. While at Sunrise, A.G. has received, and will continue to receive, counseling and care for her complex combination of mental health and addiction-related issues.

60. N.G. has paid, thus far, a total of $102,780 for services rendered at Sunrise.

61. Anthem denied coverage for services rendered at Sunrise because – it claims – the services were not, and are not, "medically necessary." Under any formulation, the services rendered for A.G. were, in fact, medically necessary, as N.G. demonstrated in the appeals process.

62. Anthem's denial breaches its enforceable promise to cover "medically necessary" services.

**WHEREFORE,** Plaintiff requests the following:

- Certification of the class described above with the appointment of Plaintiff as the class representative for the class and the undersigned attorneys as class counsel;

- An award of benefits representing those sums that Plaintiff and class members paid for services at outdoor behavioral health/wilderness treatment programs that should have been covered by Defendant;

- An award of benefits representing those sums that Plaintiff individually paid for services at Sunrise Residential Treatment Center that should have been covered by Defendant;

- Disgorgement of all profits Defendant enjoyed through the use of money that should have been used to pay Plaintiff's and class members' legitimate coverage claims;

- An order requiring Defendant to cover all medically necessary services at outdoor behavioral health/wilderness therapy programs in the future;

- An order requiring Defendant to reprocess Plaintiff's and all class members' claims incurred at any time during the class period in conformity with the Court's orders concerning the proper interpretation of the plan language at issue;

- Any and all other relief related to this action, including payment of reasonable fees, costs, and interest where permitted by law.

Dated: May 1, 2018                    Respectfully submitted,


                                      By:*/s/Robert R. Sparks*
                                      Robert R. Sparks (Ky. Bar #83685)
                                      **STRAUSS TROY CO., LPA**
                                      150 E. Fourth Street, 4th Floor
                                      Cincinnati, Ohio 45202
                                      Telephone No.: (513) 621-2120
                                      Facsimile No.: (513) 241-8259
                                      Email: rrsparks@strausstroy.com

                                      and

                                      Jordan Lewis (*pro hac vice* admission pending)
                                      **JORDAN LEWIS, P.A.**
                                      4473 N.E. 11th Avenue
                                      Fort Lauderdale, FL 33334
                                      Telephone No.: 954-616-8995
                                      Facsimile No.: 954-206-0374
                                      Email: jordan@jml-lawfirm.com

                                      *Attorneys for Plaintiff and the Putative Class*


12563501_1.doc