UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| A.G., by and through her father, N.G., individually and on behalf of all others similarly situated, | : : : : | Case No. 1:18-cv-300 |
| | : | Judge Timothy S. Black |
| Plaintiff, | : : | |
| vs. | : : | |
| COMMUNITY INSURANCE COMPANY D/B/A/ ANTHEM BLUE CROSS AND BLUE SHIELD, | : : : : | |
| Defendant. | : | |

**ORDER GRANTING DEFENDANT'S
PARTIAL MOTION TO DISMISS (Doc. 10)**

This civil action is before the Court upon Defendant Community Insurance Company d/b/a/ Anthem Blue Cross Blue Shield ("Anthem" or "Defendant")'s Partial Motion to Dismiss Counts 1 – 3 of Plaintiff's class action complaint (Doc. 10) and the parties' responsive memoranda (Docs. 21 and 22).

## I. FACTS AS ALLEGED BY THE PLAINTIFF

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiffs; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

This is an Employee Retirement Income and Security Act ("ERISA") action arising from Defendant's decision to deny health plan benefits for allegedly medically necessary services for wilderness behavioral health treatment for mental health and

1

substance abuse issues. (Doc. 1 at ¶ 1). During the relevant time period, N.G., the father of A.G., was an insured by Defendant through his employer-sponsored health insurance. (*Id.* at ¶ 7).[1]

A.G. has struggled for years with mental health issues such as depression, anxiety, eating disorders, suicide ideations, and drug use. (*Id.* at ¶ 10). After counseling, hospitalization, and other therapies were unsuccessful, A.G. was sent to Blue Ridge Therapeutic Wilderness ("Blue Ridge"). (*Id.*). Blue Ridge is an outdoor/behavioral therapy program located in Clayton, Georgia. (*Id.*). Blue Ridge is an intermediate care program licensed by the state of Georgia as an "Outdoor Child Caring Program" that treats youths with mental health and substance abuses diagnoses. (*Id.* at ¶ 12). Blue Ridge uses a multidisciplinary approach to treat youths with mental health and substance abuses diagnoses, using wilderness behavioral healthcare therapy to deliver traditional, evidence-based treatments. (*Id.* at ¶ 14). On intake, Blue Ridge patients receive a psychiatric assessment and receive tailored personal treatment including individual therapy, group therapy, and family therapy. (*Id.* at ¶ 14).

A.G. received treatment at Blue Ridge from January 5, 2017 to March 31, 2017. (*Id.* at ¶ 16). N.G. personally paid $46,650 for the Blue Ridge services. (*Id.*). On October 16, 2017, Anthem denied the claims submitted for A.G.'s treatment at Blue Ridge based on a plan provision that excludes claims for "wilderness camps." (*Id.* at

---

[1] A copy of the insurance plan issued to N.G. by Defendant is attached to the complaint. (Doc. 1-2 (the "Plan").

¶ 17).

The Plan requires one level of internal appeal, and thus the October 16, 2017 denial, which came in response to an appeal, exhausted the internal appeals process. (*Id.* at ¶ 18). Anthem had full discretionary authority to administer and pay benefits under the plan. (*Id.* at ¶ 9).

Under the terms of the Plan, Anthem is required to pay benefits for "Covered Services." (*Id.* at ¶ 58; Doc. 1-2 at M3, M-22). Covered Services are those "performed, prescribed, directed or authorized by a Provider." (Doc. 1-2 at M-112). The Plan defines "Provider" as "[a] duly licensed person or facility…." (*Id.* at M-117). The Plan defines "Facility" as:

> a facility including but not limited to, a Hospital, freestanding Ambulatory Surgical Facility, Chemical Dependency Treatment Facility, Residential Treatment Center, Skilled Nursing Facility, Home Health Care Agency or mental health facility, as defined in this Certificate. The Facility must be licensed, accredited, registered or approved by the Joint Commission or the Commission on Accreditation of Rehabilitation Facilities (CARF), as applicable, or meet specific rules set by [Defendant].

(*Id.* at M-118).

Covered Services are subject to conditions, Exclusions, limitations, terms, and provisions of the Plan. (*Id.* at M-22). The Plan states that excluded services are not covered "even if the service, supply, or equipment would otherwise be considered Medically Necessary." (*Id.*). Medically Necessary is a service known to be effective, as proven by scientific evidence, in materially improving health outcomes; the most appropriate supply, setting or level of service that can safely be provided that cannot be

omitted consistent with recognized professional standards of care; cost-effective compared to alternative interventions, not experimental; not primarily for the convenience of the insure; and not otherwise excluded. (Doc. 1 at ¶ 35; *see* Doc. 1-2 at M-114–115).

The pertinent portion of the "Non Covered Services/Exclusions" section of the Plan, under which Plaintiff's claim was denied, provides:

> We do not provide benefits for procedures, equipment, services, supplies or charges:
>
> . . .
>
> - Custodial Care, convalescent care or rest cures.
>
> - Domiciliary care provided in a residential institution, treatment center, supervised living or halfway house, or school because a Member's own home arrangements are not available or are unsuitable, and consisting chiefly of room and board, even if therapy is included.
>
> - Care provided or billed by a hotel, health resort, convalescent home, rest home, nursing home or other extended care facility home for the aged, infirmary, school infirmary, institution providing education in special environments, supervised living or halfway house, or any similar facility or institution.
>
> - Services or care provided or billed by a school, Custodial Care center for the developmentally disabled, halfway house, or outward bound programs, even if psychotherapy is included.
>
> - Wilderness camps.

(Doc 1-2 at M-55, M-57, ¶ 22).

The Plan does cover behavioral/mental health services at "Residential Treatment" in "a licensed Residential Treatment Center that offers individualized and intensive treatment that includes observation and assessment by a physician weekly or more often and rehabilitation, therapy, and education. (*Id.* at M-24). The Plan defines a "Residential Treatment Center" as:

> A Provider licensed and operated as required by law, which includes:
>
> 1. Room, board and skilled nursing care (either an RN or LUN/LPN) available on-site at least eight hours daily with 24 hour availability;
>
> 2. A staff with one or more Physicians available at all times.
>
> 3. Residential treatment takes place in a structured facility-based setting.
>
> 4. The resources and programming to adequately diagnose, care and treat a psychiatric and/or substance use disorder.
>
> 5. Facilities are designated residential, subacute, or intermediate care and may occur in care systems that provide multiple levels of care.
>
> 6. Is fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabiltation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA).

(*Id.* at M-119–20).

Defendant's motion seeks to dismiss Counts 1-3 of Plaintiff's dismiss. Count 1, brought on behalf of A.G. and the proposed class, seeks enforcement of the Plan because

5

Plaintiff contends that the services received at Blue Ridge were not excluded under the Plan. Count 2 seeks enforcement of the Plan for breach of the protections of the Mental Health Parity and Addiction Act ("Parity Act"), which mandates parity between the "treatment limitations" placed on mental health benefits and medical/surgical benefits. (Doc. 1 at ¶¶ 40–48; 29 U.S.C. § 1185a(a)(3)(A)(ii)). Count 3 is for breach of fiduciary duty for violation of the Parity Act. (*Id.* at ¶¶ 49–53). Both Counts 2 and 3 are in the alternative to Count 1.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough

to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

### III.  ANALYSIS

#### A. Count 1 – Plaintiff's Claim for Plan Benefits

Count 1 requests that the Court award benefits to Plaintiff under the Plan. "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." 29 U.S.C. § 1132(a)(1)(B). Here, the Court is unable to award benefits to Plaintiff because the services provided by Blue Ridge are expressly excluded under the Plan.

Plaintiff argues that the term "wilderness camps" is ambiguous, as it is undefined, and does not encompass the services provided at Blue Ridge. Plaintiff argues that Blue

Ridge is a "wilderness therapy program," not a "wilderness camp." *See Williams v. Intl. Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000) ("when the terms of an ERISA plan are undefined, traditional principles of contract interpretation require a plan administrator to "interpret the provisions [of the plan] according to their plain meaning in an ordinary and popular sense.") Plaintiff argues that "wilderness camps" could be understood to refer to such experiential programs such as Outward Bound. Plaintiff's response to the motion to dismiss includes a table that shows how the services provided at Blue Ridge are different from the services provided at "wilderness experiential programs" like Outward Bound. (Doc. 21 at 6–7). This argument lacks merit.

The Plan, directly above the "wilderness camp" exclusion, states that "outward bound programs" are excluded under the Plan. (Doc 1-2 at M-57, ¶ 22). A health benefit plan "should be read to give effect to all its provisions and to render them consistent with each other." *Gallo v. Moen, Inc.*, 813 F.3d 265, 270 (6th Cir. 2016) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)). Because "outward bound programs" are already expressly excluded under the Plan, "wilderness camp" must be interpreted to encompass more than simply "outward bound programs." Therefore, the Court disagrees that "wilderness camp" could be understood to refer to "outward bound programs."

It is undisputed that Anthem had full discretionary authority to interpret the Plan. (Doc. 1 at ¶ 9). Where a plan administrator is given discretionary authority, judicial review is limited to whether the denial of benefits was arbitrary and capricious.

8

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, (1989). Consequently, the Court must defer to Anthem's interpretation of the Plan unless its interpretation is arbitrary and capricious. *See Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004) (the court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants."); *Valeck v. Watson Wyatt & Co.*, 92 F. App'x 270, 273 (6th Cir. 2004) (under the arbitrary and capricious standard, the court "must defer to the plan administrator's interpretation that is rational in light of the plan's provisions.").

As described in the complaint, Blue Ridge Therapeutic Wilderness provides treatment in the wilderness. (Doc. 1 at ¶¶ 2, 13, 14, 17). On its website, Blue Ridge even refers to the setting as a <u>camp</u>. (Doc. 10-2; Doc. 10-3).[2] The Court simply cannot find that Anthem's interpretation that Blue Ridge is a wilderness camp, and therefore excluded under the Plan, is arbitrary and capricious. Therefore, Count 1 fails as a matter of law and is dismissed.

### B. Count 2 and 3 – Parity Act

Count 2 and 3 of the complaint are brought under the Parity Act. 29 U.S.C. § 1185a.

---

[2] The complaint refers to the Blue Ridge website. (Doc. 1 at ¶ 17). Because it is referred to in the Complaint and is central to Plaintiff's claim that the Plan's "wilderness camp" exclusion does not apply here, the Court may properly consider the Blue Ridge website exhibits that Anthem attaches to the motion to dismiss. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) (noting that a court can consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein")

The Parity Act was "designed to end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-sponsored group health plans and health insurance coverage offered in connection with group health plans." *Am. Psychiatric Ass'n v. Anthem Health Plans*, 50 F.Supp.3d 157, 160 (D. Conn. 2014) (quoting *Coal. for Parity, Inc. v. Sebelius*, 709 F.Supp.2d 10, 13 (D.D.C. 2010)). Under the Parity Act, when a group health plan provides coverage for both medical benefits and mental health and substance abuse benefits, the plan must ensure that:

> [T]he treatment limitations applicable to such mental health or substance abuse disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(3)(A)(ii).

Under the Parity Act, "treatment limitations" include both "quantitative" and "nonquantitative" limitations. 29 C.F.R. § 2590.712. The Parity Act implementing regulations do not provide a comprehensive definition of "nonquantitative" limitations, but includes illustrative examples, including: "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." *Id.* at § 2590.712(c)(4)(C). The regulations establish six "classifications of benefits" for determining Parity Act compliance: (1) inpatient, in-network; (2) in-patient, out-of-network; (3) outpatient, in-

10

network, (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. *Id.* at 2590.712(c)(2)(i)–(ii)(A). Group health plans are prohibited from imposing:

> [A] nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification.

*Id.* at 2590.712(c)(4)

To state a Parity Act violation, a plaintiff must allege:

> (1) the insurance plan is of the type covered by the Parity Act; (2) the insurance plan provides both medical benefits and mental-health benefits; (3) the plan has a treatment limitation – either quantitative or nonquantitative – for one of those benefits that is more restrictive for mental-health treatment than it is for medical treatment; and (4) the mental-health treatment is in the same classification as the medical treatment to which it is being compared.

*See id.* at 2590.712(c)(2)(i); *see also Bushnell v. UnitedHealth Group Inc.*, 2018 WL 1578167, at *5 (S.D.N.Y. Mar. 27, 2018); *A.H. by and through G.H. v. Microsoft Corporation Welfare Plan*, 2018 WL 2684387, at * 6 (W.D. Wash. June 5, 2018).

Here, Plaintiff contends that the Plan's exclusion of "wilderness camps" violates the Parity Act because Defendant "explicitly covers medical and surgical services rendered at intermediate facilities such as at rehabilitation hospitals and skilled nursing facilities." (Doc. 1 at ¶ 48). Defendant argues that Plaintiff's claims under the Parity Act

11

must be dismissed because Plaintiff "(i) fails to identify any 'treatment limitation' that does not apply equally to mental health and a medical/surgical analogue, and (ii) cannot plausibly allege any facts showing that wilderness programs constitute intermediate care under the Parity Act." (Doc. 10 at 11–12).

This year, several district courts have examined whether a blanket exclusion of wilderness camps/wilderness therapy programs violates the Parity Act. The Court is cognizant that the majority of district courts have denied motions to dismiss such claims brought under the Parity Act.

In *A.H. by & through G.H. v. Microsoft Corp. Welfare Plan*, 2018 WL 2684387 (W.D. Wash. June 5, 2018), the first court to examine the issue this year, the Western District of Washington dismissed the plaintiff's claim that a categorical wilderness therapy exclusion violated the Parity Act. The *A.H.* court found that that dismissal was appropriate because plaintiff was unable to demonstrate "the wilderness program exclusion is only applied to mental health treatment." *Id.* at *7.

However, in *Vorpahl v. Harvard Pilgrim Health Ins. Co.*, 2018 WL 3518511 (D. Mass. July 20, 2018), the District of Massachusetts denied a motion to dismiss Parity Act claims because the plaintiff had sufficiently alleged "that a mental-health treatment is categorically excluded while a corresponding medical treatment is not." *Id.* at *3. The *Vorpahl* court noted that there is a growing consensus "that a plan that covered skilled nursing facilities but not residential treatment programs violated the Parity Act…." *Id.*

In *A.Z. by & through E.Z. Regence Blueshield*, 333 F.Supp.3d 1069 (W.D. Wash. 2018), the Western District of Washington found that a plaintiff sufficiently stated a claim under the Parity Act by alleging that an insurer "categorically denied, in practice, coverage for medically necessary services at outdoor/wilderness behavioral healthcare programs." *Id.* at 1082. The *A.Z.* court agreed with the *Vorpahl* court that such exclusions qualify "as a discriminatory limitation." *Id.*

Most recently, in *Gallagher v. Empire HealthChoice Assurance, Inc.*, 2018 WL 4333988 (S.D.N.Y. Sept. 11, 2018), the Southern District of New York agreed with the *Vorpahl* and *A.Z.* courts that a plaintiff survives a motion to dismiss in a claim for violation of the Parity Act by alleging that analogous medical/surgical treatment was offered in residential settings, like skilled nursing facilities, but not at a wilderness therapy camp. *Id.* at *8. Importantly, the *Gallagher* court held that, at the motion to dismiss stage, the relevant analysis

> is not whether benefits for wilderness therapy are available for medical/surgical patients, but rather whether the Plan has chosen to provide benefits for skilled nursing facilities and rehabilitation centers for medical/surgical patients, but chosen to deny benefits to those with mental health conditions who seek coverage for a residential treatment center offering wilderness therapy.

*Id.*

In *Vorpahl*, *A.Z.*, and *Gallagher*, the healthcare plans at issue did not cover mental health services at residential treatment centers, but did cover services for medical/surgical services at comparable skilled nursing facilities/rehabilitation hospitals. Here, Plaintiff's

13

claims under the Parity Act ultimately fail because the Plan does provide for coverage of mental health services at residential treatment centers.

Plaintiff alleges that the Plan violates the Parity Act because it includes services at intermediate facilities such as rehabilitation hospitals and skilled nursing facilities, but not "wilderness camps." (Doc. 1 at ¶ 48). But the Plan does explicitly cover services at residential treatment centers – for both medical and mental health services – it simply does not cover any services performed at wilderness camps. (Doc. 1-2 at M-24, M-61, M-118–20). A residential treatment center is an intermediate facility analogue to a rehabilitation hospital and skilled nursing facility. Therefore, applying the standard outlined in *Gallagher*, because the Plan both provides benefits for services performed at residential treatment centers for medical/surgical patients and for mental health conditions, the Plan does not contain a discriminatory limitation.

Because the Plan equally covers mental health services and medical/surgical services at residential treatment centers, the Court cannot find that the Plan's blanket exclusion of services at "wilderness camps" is a treatment limitation in violation of the Parity Act. Accordingly, Plaintiff fails to state a viable claim under the Parity Act and dismissal of Counts 1 and 2 of the complaint is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss Counts 1–3 (Doc. 10) is **GRANTED**.

**IT IS SO ORDERED.**

Date: 1/28/19

*Timothy S. Black*
Timothy S. Black
United States District Judge